SEITZ v PROBATE JUDGES RETIREMENT SYSTEM

Docket No. 121980. Submitted February 20, 1991, at Lansing. Decided May 20, 1991, at 10:30 A.M. Leave to appeal sought.

Harry J. Seitz and Gerald R. Barr, retired probate judges, and Lillian Szymanski, widow of a retired probate judge, brought an action in the Ingham Circuit Court against the State of Michigan Probate Judges Retirement System and others, seeking a declaration that the 1976 amendment of the Probate Judges Retirement Act, MCL 38.916(1)(c); MSA 27.3178(60.16)(1)(c), is unconstitutional. Section 16(1)(c) limits the state pension annuity of a probate judge to an amount that, when added to any county pension annuity, will result in a total pension annuity not exceeding 66⅔ percent of the judge's final salary. The court, James T. Kallman, J., granted the plaintiff's motion for summary disposition, finding that the 1976 amendment impaired or diminished county pension benefits in violation of the pension clause of the Michigan Constitution, impaired a contractual obligation in violation of the contract clauses of the state and federal constitutions, and violated the title-object clause of the Michigan Constitution. The defendants appealed.

The Court of Appeals *held:*

The 1976 amendment of § 16(1)(c) of the Probate Judges Retirement Act does not violate the pension clause of the state constitution or the contract clauses of the state or federal constitutions, except: the limitation provision might reduce the state pension annuity of probate judges who became members of the retirement system before the 1976 amendment to an amount less than that which would have been payable pursuant to the provisions of the act before the 1976 amendment. Because the limitation provision of the 1976 amendment is not unconstitutional on its face, the trial court erred in granting the plaintiffs' motion for summary disposition.

1. The 1976 amendment neither impairs any county pension

REFERENCES

Am Jur 2d, Pensions and Retirement Funds §§ 1621-1625, 1696, 1707-1710.

See the Index to Annotations under Impairment of Contract; Judges; Pension and Retirement.

annuity obligation nor limits the amount of any pension annuity which may be paid by the county.

2. Before its 1976 amendment, the Probate Judges. Retirement Act provided that probate judges then in the state retirement system could receive at most a state pension annuity of $12,500. The 1976 amendment raised the maximum state pension annuity to the greater of $15,000 or forty percent of the retired judge's final salary, but limited the maximum combined state and county pension annuities to 66⅔ percent of the judge's final salary. While under certain circumstances a judge might be entitled to a larger combined pension by electing to be bound by the preamendment provisions, there has been no showing that any of the plaintiffs would receive a larger combined pension by so electing.

3. The 1976 amendatory act does not violate the title-object clause of the Michigan Constitution.

Reversed and remanded.

JUDGES — PROBATE JUDGES — RETIREMENT BENEFITS — PROBATE JUDGES RETIREMENT ACT.

The provision of the 1976 amendment of the Probate Judges Retirement Act that limits any state pension benefit paid to a retired probate judge to an amount that when added to a county pension benefit will not exceed 66⅔ percent of the retired judge's final salary does not violate either the pension plan provision of the Michigan Constitution or the impairment of contract provisions of the Michigan and federal constitutions except where the operation of that limitation that reduce the state contribution to less than the amount which was payable under the act before the amendment (US Const, art I, § 10; Const 1963, art 1, § 10 and art 9, § 24; MCL 38.916[1][c]; MSA 27.3178[60.16][1][c]).

*Foster, Swift, Collins & Smith, P.C.* (by *Lawrence B. Lindemer, Theodore W. Swift,* and *Glen A. Schmiege*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Walter V. Kron* and *Michael J. Moquin,* Assistant Attorneys General, for the defendants.

Before: SAWYER, P.J., and HOOD and MURPHY, JJ.

SAWYER, P.J. Defendants appeal from an order of the circuit court granting summary disposition in favor of plaintiffs pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) after the court found MCL 38.916(1)(c); MSA 27.3178(60.16)(1)(c) to be unconstitutional and severed that provision from the remainder of the statute. We reverse.

This dispute concerns the constitutionality of a provision of the statute providing for state pension benefits to probate judges that was added by 1976 PA 324 and that, among other things, restricts the amount of the retirement annuity paid by the state to an amount which, when combined with any annuity paid under a county retirement system, results in a total combined annuity that does not exceed 66⅔ percent of the final salary of the retired probate judge. This limitation affects the amount of retirement benefits received by plaintiffs.

Plaintiff Seitz served continuously as a probate judge in Monroe County from January 1965 through September 1985. Plaintiff Barr served continuously as a probate judge in St. Clair County from January 1971 through January 1, 1989. Plaintiff Szymanski is the widow of Frank Szymanski, who had served continuously as a probate judge in Wayne County from October 1959 through April 1987. All three probate judges were members of defendant State of Michigan Probate Judges Retirement System during the time they served as probate judges. Each judge was also a member of his county retirement system. Each plaintiff currently receives a pension benefit from the state retirement system. At the time of the circuit court's decision in this matter, plaintiffs Barr and Szymanski also received pension benefits from their county systems. Plaintiff Seitz' county

retirement benefits were not scheduled to begin until June 1990.

MCL 38.916(1); MSA 27.3178(60.16)(1) provides in pertinent part as follows:

> Upon a member's retirement from service as provided in this act, the member shall receive a retirement annuity equal to 3% of the final salary multiplied by the number of years and fraction of a year for service credited to the member's account, except that a member who makes the election described in subdivision (d) shall receive an annuity equal to 3.5% of the final salary multiplied by the number of years and fraction of a year for service credited to the member's account or as otherwise provided in subdivision (d). The annuity shall:
>
> (a) Not be less than $4,000.00 per annum if the member has 12 years of service credit.
>
> (b) Not exceed $15,000.00 per annum or 40% of the final salary of the member, whichever is greater.
>
> (c) When added to a county pension benefit payable under section 12a of Act No. 156 of the Public Acts of 1851, as amended, being section 46.12a of the Michigan Compiled Laws, not exceed 66⅔% of final salary.

Because of the limitation contained in § 16(1)(c), plaintiffs Seitz and Szymanski receive less than the maximum state retirement annuity under § 16(1)(b). At the time of the circuit court's decision, plaintiff Seitz was receiving a state retirement benefit of $26,318. However, upon reaching the age of sixty in June 1990, plaintiff Seitz' state retirement annuity was reduced by $6,677.12, for a total state retirement annuity of $19,640.88. This reduction is due to the limitation contained in

§ 16(1)(c).[1] Thus, under the circuit court's ruling that § 16(1)(c) is unconstitutional, each plaintiff would be entitled to a greater retirement benefit by being eligible to receive the maximum amount allowed under § 16(1)(b).

Defendants first argue that the trial court erred in determining that § 16(1)(c) violates the provisions of Const 1963, art 9, § 24, which provides in pertinent part as follows:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.

We agree that the trial court erred in reaching the conclusion that § 16(1)(c) is violative of this constitutional provision.

Article 9, § 24 protects those persons covered by a state or local pension or retirement plan from having their benefits reduced. See *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 69; 214 NW2d 803 (1974).

Plaintiffs argue, and the trial court reasoned, that § 16(1)(c) violates art 9, § 24 because it, in effect, impairs or diminishes county pension benefits, because there is a point, as with the pensions involved in the case at bar, where additional county pension benefits will cause the state pension benefit to be reduced on a dollar-for-dollar basis. While this is the effect of § 16(1)(c), we do

[1] The briefs of the parties were filed before June 1990 and, therefore, speak in future terms of what "will" happen to plaintiff Seitz upon his eligibility for county retirement benefits in June 1990. We assume that the events predicted in the parties' briefs concerning what would happen in June 1990 did, in fact, happen once plaintiff Seitz reached his sixtieth birthday inasmuch as we have not been informed that such events did not, in fact, occur.

not believe that that violates the provisions of art 9, § 24.

Article 9, § 24, prohibits the diminishment or impairment of accrued pension benefits. Nothing in § 16(1)(c) reduces the amount of pension benefit to be paid by counties. Although it is true that there is little incentive for a county to pay a pension benefit in excess of 26⅔ percent of a probate judge's final salary,[2] that fact does not constitute a constitutional violation. First, and foremost, a retired probate judge will continue to collect his full county pension under the provisions of § 16(1)(c). That is, the 66⅔ percent cap under § 16(1)(c) does not impose a limit on the amount of the pension benefit to be paid by the county, rather it imposes a limit on the amount of the state pension annuity to be paid. Thus, each probate judge continues to receive the full amount of his county pension benefit.

Second, nothing in § 16(1)(c) limits a county from paying a county retirement benefit in excess of 66⅔ percent of the final salary.[3] Thus, if a judge is a member of a county retirement system and is eligible to receive, for example, seventy percent of his final salary under the provisions of that county retirement plan, nothing in § 16(1)(c) serves to

[2] A county pension benefit of 26⅔ percent of the judge's final salary plus the maximum state annuity of forty percent of the final salary equals the cap on the combined annuity of 66⅔ percent. Thus, for each pension dollar in excess of 26⅔ percent of the final salary paid by the county, the state annuity will be reduced by a dollar.

[3] As plaintiffs acknowledge, there is a limitation on the amount of a county pension benefit contained in MCL 46.12a(1)(b); MSA 5.333(1)(1) (b). Under that statute, a county can elect one of two plans with respect to the maximum pension benefit: (A) a limit of $150 per month or two percent of the average monthly earnings for the five years preceding retirement times years of service of the employee, whichever is lesser, or (B) two percent of the employee's highest average monthly compensation for five years of service times total number of years of service, not to exceed seventy-five percent of the average final compensation of the employee. Plaintiffs have not challenged the validity of this limitation.

prevent the county from paying that full benefit. The judge, of course, will not receive any state retirement annuity, because he will already be receiving benefits in excess of the combined cap of 66⅔ percent.[4]

Although we conclude that § 16(1)(c) does not violate any rights in a county pension plan that are secured under art 9, § 24, because it does not diminish or impair a retirant's accrued rights under a county pension plan, it could conceivably be violative of that constitutional provision because it diminishes or impairs the accrued benefits of a probate judge under the state retirement system. As discussed above, under art 9, § 24, a retirement benefit cannot be reduced. Thus, if the state pension benefit to which a probate judge would be entitled under § 16(1)(c) as it currently exists is less than the state retirement benefit to which the probate judge would have been entitled under the provisions of § 16 before the 1976 amendment, the current provisions of § 16(1)(c) would be unconstitutional as applied to that particular judge under the provisions of art 9, § 24.

Before the 1976 amendment, § 16 provided for a maximum state benefit of $12,500, but without any limitation on the combined state and county benefit. Because the Legislature could not reduce the pension benefit with respect to those judges who were judges of probate before the effective date of

---

[4] Although we do not believe that § 16(1)(c) can be read as imposing a limit on the maximum amount which a county can pay as a retirement benefit, we would agree that such provision of § 16(1)(c) would be unconstitutional under art 9, § 24, at least with respect to those judges who became judges of probate before the effective date of 1976 PA 324. Thus, if we are incorrect in our conclusion that § 16(1)(c) does not impose a limitation on the maximum amount of a county pension benefit to be paid, then we conclude that, to the extent that § 16(1)(c) does impose such a restriction on the maximum amount of county pension benefits, it is unconstitutional under art 9, § 24, with respect to those judges who became judges of probate before the effective date of the act.

the 1976 act, those judges are, at a minimum, entitled to the state pension benefit which would have been paid before the 1976 amendment, namely three percent of the final salary times years of service, to a maximum of $12,500. In other words, the maximum combined limitation of 66⅔ percent cannot be applied to the pensions of judges who became judges of probate before the effective date of the 1976 act if doing so would reduce their state retirement benefit below the amount they would have been entitled to under the provisions of § 16 before the 1976 amendment.

For example, let us consider the case of the hypothetical "Probate Judge X." Judge X was a judge of probate before the enactment of the 1976 act and continued to be a judge of probate for a number of years thereafter. Let us assume that, had the 1976 amendment to § 16 never occurred, Judge X would have been entitled to the maximum annual state retirement benefit of $12,500. Under these terms, consistent with the requirements of art 9, § 24, Judge X cannot, even under the current provisions of § 16(1)(c), receive less than $12,500 in state retirement benefits. That was an accrued benefit to Judge X before the enactment of the 1976 amendment and that benefit cannot be reduced under the restrictions of art 9, § 24.

However, the 1976 amendment, in addition to creating the 66⅔ percent combined benefit cap, also increased the limitation on the state retirement benefit to $15,000 or forty percent of the final salary, whichever is greater. Thus, a probate judge may well be entitled to a state retirement benefit well in excess of the $12,500 limit in effect before the 1976 amendment. It would not be a violation of art 9, § 24, to apply the provisions of § 16(1)(c) to the state benefit limitation of forty

percent of final salary now contained in § 16(1)(b).[5] The maximum combined cap set forth in § 16(1)(c) is not violative of art 9, § 24, with respect to the forty percent final salary cap contained in § 16(1)(b), because those provisions were added at the same time and there was no accrued benefit with respect to the forty percent cap before the enactment of the 66⅔ percent combined cap. Thus, the Legislature could properly enact a 66⅔ percent combined cap as applied to the forty percent state cap in the same piece of legislation without violating the provisions of art 9, § 24, because no accrued pension benefit was diminished or impaired.

For example, consider the situation of hypothetical "Probate Judge Y." Judge Y, who was also a probate judge before the enactment of the 1976 act and would also be entitled to the maximum state benefit of $12,500 as provided in § 16 before the 1976 amendment, retires as a judge of probate with a final annual salary of $80,000. Judge Y is entitled to a county pension benefit of $24,000 per year. Judge Y would also be entitled to a maximum state retirement benefit of forty percent of his final salary, or $32,000, under § 16(1)(b). However, § 16(1)(c) would limit his state retirement benefit to only $29,333.33, so that the combined county and state pension benefit would not exceed 66⅔ percent of his final salary. No violation of art 9, § 24, however, occurs. Judge Y is still receiving his full county pension plus a state pension benefit which is in excess of that pension benefit to which Judge Y would have been entitled had the 1976 amendment never been enacted, because in that situation Judge Y would have received only

---

[5] We note that the statute was reorganized in amendments after the 1976 amendment and there were no subdivisions b and c at the time of the 1976 amendment. However, the substantive provisions were not changed in that reorganization and we refer to the subdivisions as they currently exist for purposes of clarity.

$12,500 in an annual state pension benefit, rather than $29,333.33. Thus, with respect to Judge Y, the net effect of the 1976 amendment was to increase his state pension benefit, albeit in an amount slightly less than the amount the increase would have been but for the 66⅔ percent combined benefit cap.

To summarize, we conclude that the 1976 amendment to § 16 does not violate art 9, § 24 with respect to the county pension benefits, because those benefits remain fully payable. The amendment may violate art 9, § 24, as applied to an individual judge where that judge was a judge of probate before the enactment of the 1976 amendment and the effect of the 66⅔ percent combined benefit cap would be to reduce the judge's state retirement benefit to an amount less than the amount to which the judge would have been entitled under the provisions of § 16 before the enactment of the 1976 amendment.

Applying this conclusion to the case at bar, it does not appear that any of the state retirement benefits received by any of the plaintiffs are less than the amount they would have received under the provisions of § 16 before the enactment of the 1976 amendment.[6] However, because this issue was not addressed by the trial court, plaintiffs are free to argue on remand that their state pension benefits would have been greater under the provisions of § 16 before the 1976 amendment, and, if that is the case, the trial court shall order defendants to pay the retirement benefit in the greater amount.

The trial court also concluded that § 16(1)(c) is unconstitutional because it violates the provisions

---

[6] In making this observation, we are relying upon the figures presented at page five of defendants' brief on appeal. We do not intimate that this is a finding of fact by this Court or that it would be clearly erroneous for the trial court to reach a contrary conclusion.

of Const 1963, art 1, § 10, and US Const, art I, § 10, both of which prohibit the state from enacting any law which impairs the obligation of contracts. We disagree. These clauses provide that vested rights acquired under a contract may not be destroyed by subsequent state legislation. *Campbell v Judges' Retirement Bd,* 378 Mich 169, 180; 143 NW2d 755 (1966). However, the analysis applied to this issue does not materially differ from the analysis applied to the preceding issue. Simply, there was no vested right to the state pension benefit of up to forty percent of final salary at the time of the enactment of the 66⅔ percent combined benefit limitation, because both provisions were added by the same act. However, our analysis of this issue would be the same as that applied to the preceding issue with respect to those individuals who were judges of probate before the effective date of the 1976 amendment and for whom the 66⅔ percent combined benefit cap would cause their state retirement benefit to be reduced below the amount to which they would have been entitled under the provisions of § 16 before the enactment of the 1976 amendment. That is, the constitutional prohibitions against the impairment of contracts would also require the state to honor the more generous benefit to be paid under the provisions of the statute before amendment. There is, however, no violation of the constitution with respect to those judges whose retirement benefits are greater following the 1976 amendment and, for that matter, with respect to those individuals who did not become judges of probate until after the effective date of the 1976 amendment.

In a nutshell, the principle of law to be applied is that the Legislature may increase pension benefits but not reduce them with respect to those

individuals who have accrued rights under the pension plan at the time of the legislative enactment. *Campbell, supra* at 181-182; see also *Wise v Michigan,* 159 Mich App 446; 407 NW2d 29 (1987). Thus, while the Legislature may change public pension plans from time to time, including adding restrictions on benefits, the state may not reduce the pension benefit of any state employee or official, or local employee or official, once a pension right has been granted. This, however, has not occurred in the case at bar. The general effect of the 1976 amendment was to increase the state retirement benefits paid to probate judges, albeit with some restrictions. But so long as the retired probate judge receives a greater state pension benefit under the current version of the retirement plan than that which the judge would have received before the 1976 amendment, no constitutional violation occurs. Furthermore, even though there might be some cases in which a retired judge would receive greater benefits under the pre-1976 version of § 16 than under the version created by the 1976 amendment, the remedy is not to throw out the amendment in its entirety, but merely to require the state to honor its obligations to those specific judges under the pre-1976 version of the statute.

The circuit court also found that the 1976 amendment of § 16 violates the Title-Object Clause of the Michigan Constitution, Const 1963, art 4, § 24, which requires that a law embrace no more than one object, which shall be expressed in its title. The trial court's reasoning in this regard, quite frankly, eludes us. The trial court concluded that the Title-Object Clause is violated because the statute that was amended by the 1976 act relates to the state retirement system and not to the

county retirement system. However, as discussed above, the 1976 amendment imposes no restrictions or limitations or otherwise regulates county retirement systems. Rather, it solely affects the state retirement system, creating benefits and imposing limitations on benefits under that state retirement system. Furthermore, the object of the amendment, to provide for retirement benefits for probate judges, is clearly expressed in the title of the act, which states that it is an act to provide for a retirement system for judges of probate. Accordingly, the object of the bill is clearly expressed in the title of the act.[7]

Because we conclude that the 1976 amendment of § 16 was constitutional, and that the trial court erred in concluding otherwise,[8] we need not address the question whether the provisions of § 16(1)(c) are severable from the provisions of § 16(1)(b).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Defendants may tax costs.

---

[7] The trial court's conclusion, and plaintiffs' position, with respect to this issue appears to be based in the false premise discussed above that the limitations of the state retirement benefit somehow restrict the county retirement benefits in that, the county would have little incentive to increase retirement benefits beyond 26⅔ percent of the judges' final salary, because there would be a dollar-for-dollar reduction in the state retirement benefit if the county retirement benefit exceeded that figure. However, as discussed above, that argument is specious and has no greater validity in the analysis of the Title-Object Clause issue than it did in the analysis of art 9, § 24.

[8] Subject, again, to the caveat that the state must honor the pension benefits accrued before the 1976 amendment for those individuals who were judges of probate before the amendment and that the maximum combined benefit cap of 66⅔ percent contained in § 16(1)(c) cannot be applied to reduce the state retirement benefit of such judges to an amount less than the amount of state retirement benefits they would have received under the pre-amendment version of the statute.