TYLER v LIVONIA PUBLIC SCHOOLS

Docket No. 109196. Argued October 7, 1998 (Calendar No. 13). Decided
      March 23, 1999.

      Reynold Tyler was awarded a pension under the Public School
          Employees Retirement Act, MCL 38.1301 *et seq.*; MSA 15.893(111)
          *et seq.*, as a result of a work-related back injury incurred during
          employment with the Livonia Public Schools. The pension benefits
          were coordinated with worker's compensation under § 354 of the
          Worker's Disability Compensation Act, MCL 418.101 *et seq.*; MSA
          17.237(101) *et seq.* The magistrate concluded that the exception to
          coordination, § 354(14), did not apply. The Worker's Compensation
          Appellate Commission affirmed. The Court of Appeals, GRIFFIN, P.J.,
          and MACKENZIE and SAWYER, JJ., denied leave to appeal (Docket No.
          169388). The Supreme Court remanded the case to the Court of
          Appeals as on leave granted. 447 Mich 970 (1994). On remand, the
          Court, MARKEY and P. J. SULLIVAN, JJ. (SMOLENSKI, P.J., dissenting),
          affirmed, finding that the use of the phrase "plan or program" in
          § 354(1) and the word "plan" in § 354(14) reflected a legislative
          intent to treat these two items differently, and that PSERA pension
          benefits were a "program" and thus subject to coordination. It fur-
          ther found that Const 1963, art 9, § 24, which prohibits an accrued
          pension benefit provided by the state from being diminished or
          impaired, did not apply to disability pensions, except for persons
          whose right to such pensions had vested on March 31, 1982. 220
          Mich App 697 (1996) (Docket No. 179336). The plaintiff appeals.

      In an opinion by Justice TAYLOR, joined by Chief Justice WEAVER,
      and Justices BRICKLEY, CORRIGAN, and YOUNG, the Supreme Court
      *held*:

      The reduction of the plaintiff's worker's compensation benefits
      because of payments he received under his Public School Employ-
      ees Retirement Act disability pension was appropriate under § 354.
      PSERA pension benefits are to be coordinated with worker's com-
      pensation benefits under § 354, and any reduction in worker's com-
      pensation benefits resulting from such coordination does not vio-
      late Const 1963, art 9, § 24 because the reduction does not diminish
      or impair a government pension benefit.

1. Section 354(14), when read in context, clearly applies only to private pension plans. Pension arrangements pursuant to statute invariably are "created" or "established" and "amended" rather than "entered into" or "renewed." "Created" and "amended" are not words of contract, but rather are the words of a legislature at work, implying unilateral action. The Legislature's choice of the words "entered into" and "renewed" demonstrates that the meaning of the term "plan" in § 354(14) does not include pensions provided pursuant to statute, but rather only those privately negotiated. Accordingly, disability pension benefits under the PSERA are not included in the exception set forth in § 354(14), and thus are to be coordinated with worker's compensation benefits as mandated in that section.

2. Const 1963, art 9, § 24 protects from diminishment or impairment only pension benefits, not worker's compensation benefits. In this case, it is worker's compensation, not the pension, that is being reduced. Coordination has not diminished the value of the pension because the amount paid as a pension benefit does not change.

Affirmed.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that the Legislature failed to express an intention that coordination of disability pension payments under the Public School Employees Retirement Act and worker's compensation payments should occur.

The Legislature's choice of the words "created" and "amended" in § 354(14) does not evidence an intent that only pension plans established through collective bargaining be free of coordination. Even statutorily created pension plans are subject to contractual negotiation. The Legislature did not intend the distinction the majority draws between statutorily and privately created pension plans. Had it wished to draw such a distinction in § 354(14), it easily could have, and most likely would have, done so in a far less confusing manner.

The better view is that the Legislature utterly failed to consider the interaction of the PSERA with the WDCA's coordination provisions. Even if the Legislature had addressed coordination in the context of the instant case with the intent of preventing double recovery, the majority's decision does not comport with that intent. Double recovery more properly may be prevented by reducing the total benefits only enough to ensure that the PSERA allowance, added to worker's compensation benefits, does not exceed the average annual salary paid before disability. Requiring offset of WDCA benefits in the full amount of PSERA benefits does not comport with the goal that worker's compensation benefits should restore wage earning capacity lost in on-the-job accidents.

*Sachs, Waldman, O'Hare, Helveston, Bogas & McIntosh, P.C.* (by *Granner S. Ries*), for plaintiff-appellant.

*Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, P.C.* (by *Thomas L. Fleury* and *John J. Rabaut*), for defendant-appellee.

Amicus Curiae:

*Martin L. Critchell* for Michigan Self-Insurers' Association.

TAYLOR, J. We granted leave to appeal in this case to determine (1) whether MCL 418.354(14); MSA 17.237(354)(14) of Michigan's Worker's Disability Compensation Act[1] excepts disability pension payments made under the Public School Employees Retirement Act[2] (PSERA) from coordination with worker's compensation payments as mandated under MCL 418.354(1); MSA 17.237(354)(1), and (2) if coordination is required, whether the resulting reduction in worker's compensation payments violates Const 1963, art 9, § 24 , which prohibits the diminishing or impairing of an accrued financial benefit under a state pension plan.

We hold that § 354(14) does not except PSERA pension payments from coordination under § 354(1), and that the resulting reduction in worker's compensation benefits does not violate art 9, § 24. Accordingly, we affirm the judgments of the Court of Appeals and the Worker's Compensation Appellate Commission.

---

[1] MCL 418.101 *et seq.*;  MSA 17.237(101) *et seq.*

[2] MCL 38.1301 *et seq.*;  MSA 15.893(111) *et seq.*

I. FACTS AND PROCEEDINGS

Plaintiff Reynold Tyler began working as a brick mason for the Livonia Public Schools in February, 1978. As a result of a work-related back injury in 1989, he began receiving a PSERA disability pension in May 1990.

In March, 1991, a worker's compensation magistrate awarded plaintiff worker's compensation benefits, subject to coordination under § 354(1)[3] of the Worker's Disability Compensation Act. The magistrate concluded that § 354(1) required coordination of these worker's compensation benefits with plaintiff's PSERA disability pension benefits (which resulted in a decrease in the worker's compensation payments by the amount of the pension benefits), and that the exception to coordination found in § 354(14)[4] did not apply to plaintiff's PSERA disability pension plan.

---

[3] Section 354(1) states, in part:

(1) This section is applicable when either weekly or lump sum payments are made to an employee as a result of liability pursuant to section 351, 361, or 835 with respect to the same time period for which . . . payments under . . . a disability insurance policy provided by the employer; or *pension or retirement payments pursuant to a plan or program established or maintained by the employer,* are also received or being received by the employee. Except as otherwise provided in this section, the employer's obligation to pay or cause to be paid weekly benefits . . . shall be reduced by these amounts:

*          *          *

(d) The after-tax amount of the pension or retirement payments received or being received pursuant to a plan or program established or maintained by the same employer from whom benefits under section 351, 361, or 835 are received, if the employee did not contribute directly to the pension or retirement plan or program. [MCL 418.354(1); MSA 17.237(354)(1) (emphasis added).]

[4] Section 354(14) provides:

Plaintiff appealed that portion of the magistrate's decision calling for the coordination of his benefits to the Worker's Compensation Appellate Commission, arguing that the magistrate's order to coordinate benefits was "legally incorrect." 1993 Mich ACO 1604. The WCAC, with one member dissenting, upheld the magistrate's decision, agreeing that the exception to coordination set forth in § 354(14) did not apply to PSERA disability pension payments.

The WCAC concluded that the purpose of § 354(14) was to "permit[] employees to negotiate non-coordination of disability pension plan benefits" with worker's compensation benefits. 1993 Mich ACO 1608. The WCAC reasoned that, in establishing the right of employers to coordinate benefits, the Legislature was cognizant that existing plans were the result of many years of collective bargaining that did not contemplate coordination. Accordingly, the WCAC concluded that the Legislature had enacted § 354(14) primarily with the negotiation of collective bargaining agreements by the *private sector* in mind. The commission noted that § 354(14) uses the terms "same employer," "renewed," and "entered into" because the section does not contemplate inclusion of "disability pension plans for public employees, established by mandatory edict of statute." 1993 Mich ACO 1608.[5]

---

This section does not apply to any payments received or to be received under a disability pension plan provided by the same employer which plan is in existence on March 31, 1982. Any disability pension plan entered into or renewed after March 31, 1982 may provide that the payments under that disability pension plan provided by the employer shall not be coordinated pursuant to this section. [MCL 418.354(14); MSA 17.237(354)(14).]

[5] Alternatively, the WCAC stated that even if § 354(14) applied, that is, the statutorily created PSERA disability pension was somehow an excepted

The Court of Appeals initially denied plaintiff's application for leave to appeal. We remanded for consideration as on leave granted. 447 Mich 970 (1994). On remand, the Court of Appeals affirmed the decision of the WCAC in a two-to-one decision, with the majority agreeing that § 354(14) does not apply to PSERA disability payments. 220 Mich App 697, 702; 561 NW2d 390 (1996). In addition, the Court of Appeals addressed a newly raised constitutional question regarding the validity of this result in light of Const 1963, art 9, § 24, which prohibits an accrued pension benefit provided by the state from being diminished or impaired. The Court stated that the constitutional provision did not apply to disability pensions, "except for persons who are already disabled and therefore whose right to such pension has vested ('accrued')." *Id.* at 704. On the basis of this reasoning, the Court concluded that because plaintiff was not disabled on March 31, 1982 (the date § 354 coordination became effective), he had no right to a disability pension and therefore had no "accrued" disability benefit that could be diminished or impaired in violation of the constitutional section. *Id.* at 703-704.

---

plan under the first sentence of § 354(14), the PSERA was "renewed" by analogy when (1) plaintiff's union renegotiated the contract controlling his employment in July 1988, (2) the Legislature amended sections of the PSERA in 1989 without amending the section at issue to add non-coordination language, and (3) the Legislature and school district undertook the school fund appropriation and budget adoption processes and in doing so did not provide for non-coordination. 1993 Mich ACO 1609. Accordingly, because none of these "renewals" added non-coordination language, the WCAC concluded that the PSERA payments would be subject to coordination even if the PSERA pension was excepted under the first sentence of § 354(14).

Plaintiff filed an application with this Court for leave to appeal, and we granted plaintiff's application. 456 Mich 959 (1998).

## II. STANDARD OF REVIEW

This Court has the power to review questions of law involved in any final order of the WCAC. MCL 418.861; MSA 17.237(861). We review such legal issues de novo, *Hagerman v Gencorp Automotive*, 457 Mich 720, 727; 579 NW2d 347 (1998), according great weight to the administrative interpretation of the statute unless such interpretation is clearly wrong. *Murphy v Michigan*, 418 Mich 341, 348-349; 343 NW2d 177 (1984); *Schuhknecht v State Plumbing Bd*, 277 Mich 183, 186-187; 269 NW 136 (1936).

## III. DISCUSSION

### A. THE WORKER'S DISABILITY COMPENSATION ACT

In the early 1980's, the Legislature, after a good deal of public discussion, came to the view that the costs of Michigan's worker's compensation system were excessive and therefore a deterrent to the state's nascent economic recovery from the recession of the late 1970's. See Senate Analysis Section, SB 573, January 7, 1982. To sense the tenor of the argument of the reformers, it is helpful to recall, as this Court did in *Franks v White Pine Copper Div*, 422 Mich 636, 655; 375 NW2d 715 (1985), the words of the then Governor William Milliken, who described the system as the " 'biggest single liability to Michigan's job climate today.' " Having determined to reduce worker's compensation's costs, the Legislature

passed a series of measures, including legislation limiting attorney fees in worker's compensation cases,[6] legislation regulating medical fees,[7] and legislation excluding certain fringe benefits from the calculation of worker's compensation.[8] See *id.*

These bills also included a measure to end the duplicative payment of worker's compensation benefits to employees who receive other forms of wage-loss benefits, MCL 418.354; MSA 17.237(354). This reform, described as "coordination," meant that the injured party's worker's compensation was to be reduced by the amount of the other wage-loss benefits received, such as payments from a disability pension. This approach, which served to reduce disincentives to return to work, was in harmony with the traditional goal of Michigan's worker's compensation, which has always been to rehabilitate workers so as to facilitate their return to work. *Bower v Whitehall Leather Co*, 412 Mich 172, 191; 312 NW2d 640 (1981).

To implement coordination, § 354(1) sweeps broadly. It states in pertinent part that worker's compensation benefits "*shall* be reduced by . . . [t]he after-tax amount of the pension . . . payments received or being received pursuant to a plan or program established or maintained by the same employer from whom [worker's compensation] benefits . . . are received . . . ." (Emphasis added.)

With this section having established across the board coordination, the Legislature then carved out, in § 354(14), some narrow exceptions to universal

---

[6] MCL 418.858; MSA 17.237(858).
[7] MCL 418.315; MSA 17.237(315).
[8] MCL 418.371; MSA 17.237(371).

coordination. The scope of these exceptions is at issue here.

The initial sentence of § 354(14) states that coordination "does not apply to any payments received or to be received under a disability pension plan provided by the same employer which plan is in existence on March 31, 1982." The second sentence of § 354(14) states: "Any disability pension plan entered into or renewed after March 31, 1982 may provide that the payments under that disability pension plan provided by the employer shall not be coordinated pursuant to this section." These are essentially "opt out" clauses. By their terms, they apply only to disability pension plans that are entered into or renewed after March 31, 1982. These provisions permit plans that are entered into or renewed after March 31, 1982, to be exempted from the general coordination requirement. Said another way, these clauses, if utilized, allow parties to a disability pension plan entered into or renewed after March 31, 1982, to except such plan from the general regime of coordination by specifically so providing in the plan.

The scope of this "opt out" language is central to the resolution of this dispute. In particular, is the language of § 354(14) to be read to apply to statutory pensions as well as privately negotiated pensions, or only to the latter? We conclude it applies only to privately negotiated pensions.

This section of the statute when read in context clearly applies only to private pension plans because of the words used and their meaning in the law. Contextual understanding of statutes is generally grounded in the doctrine of *noscitur a sociis*: "[i]t is known from its associates," see Black's Law Diction-

ary (6th ed), p 1060. This doctrine stands for the principle that a word or phrase is given meaning by its context or setting. *State ex el Wayne Co Prosecutor v Diversified Theatrical Corp*, 396 Mich 244, 249; 240 NW2d 460 (1976), quoting *People v Goldman*, 7 Ill App 3d 253, 255; 287 NE2d 177 (1972).[9] As the second sentence of § 354(14) enables employers and employees who "enter[] into" or "renew[]" pension plans to opt out of § 354(1)'s coordination requirement, we must look to the legal disciplines such words call forth. These words are contractual in nature, terms used by contracting parties when, for example, negotiating a pension plan in conjunction with collective bargaining. On the other hand, pension arrangements pursuant to statute invariably are "created" (or "established") and "amended" rather than "entered into" or "renewed." This distinction is significant because "created" and "amended" are not words of contract, but rather are the words of a legislature at work, implying, as they do, unilateral action. The Legislature's choice of the words "entered into" and "renewed" demonstrates that the meaning of the term "plan" in § 354(14) does not include pensions provided pursuant to statute, but rather only those privately negotiated.

In response to this context argument, it was argued that § 354(14)'s use of the word "plan" must encompass both private and statutory pensions, because "plan" is frequently used in other subsections of this

---

[9] United States Supreme Court Justice Antonin Scalia has clarified the meaning of this rule by the example he uses in his recent book, *A Matter of Interpretation*. We repeat it here: "If you tell me, 'I took the boat out on the bay,' I understand 'bay' to mean one thing; if you tell me, 'I put the saddle on the bay,' I understand it to mean something else." (Princeton, New Jersey: Princeton University Press, 1997), p 26.

statute to mean both and thus § 354(14), by use of an in pari materia argument, must be held to cover both types of pensions. This argument fails, however, because the interpretive aid of the doctrine of in pari materia can only be utilized in a situation where the section of the statute under examination is itself ambiguous. *Voorhies v Faust*, 220 Mich 155, 157; 189 NW 1006 (1922); 2B Singer, Sutherland Statutory Construction (5th ed), § 51.01, p 117; Black's Law Dictionary (6th ed), p 791. That not being the case here, in pari materia techniques are inappropriate.[10]

---

[10] The dissent has wisely chosen to not deploy this argument but has instead argued the rather remarkable position that no intention to coordinate any pension can be found in the sections of the statute here under discussion. *Post* at 399, 402. They find support for their conclusion in the fact that the Legislature has provided that "any matter relating to the retirement system" established in the Fire Fighters and Police Officers Retirement Act is a mandatory subject of collective bargaining under MCL 38.556e; MSA 5.3375(6.5). Why this establishes no interest in coordination in the statute we are focused upon is difficult to discern. Moreover, it is valuable to point out that, assuming arguendo, MCL 38.556e; MSA 5.3375(6.5) includes coordination within the topics of mandatory bargaining, that fact would only be germane to the PSERA statute, perhaps by analogy, if the PSERA statute had a comparable section to that referred to in the Fire Fighters and Police Officers Retirement Act. It does not have such a section, however. Thus, the foray by the dissent into the complications of bargaining under the Fire Fighters and Police Officers Retirement Act is fruitless because it provides no guidance in our present undertaking.

The dissent also argues that the Fire Fighters and Police Officers Retirement Act and the State Police Retirement Act contain their own coordination provisions. Because these are pensions created by statute, they argue that, somehow, this shows that all such pensions must have similar coordination provisions. This again begs the question, why? It is argued that to not see it as the dissenters do is to not understand that the Legislature "utterly failed to consider the interaction of the PSERA with the WDCA's coordination provisions." *Post* at 400. Yet the Legislature can treat entities differently unless they breach a constitutional protection of one of those entities (which no one asserts has happened here). Furthermore, that the Legislature chose a different coordination system for police officers and fire fighters, if indeed it did do this as the dissenters assert, does not mean that the Legislature "utterly failed" to consider the PSERA, but rather should be held to show, as legislators are with good reason

That the Legislature would feel comfortable treating coordination requirements for privately negotiated pension plans differently than for those pensions created by statute is not hard to understand, as legislatures dealing with labor matters frequently utilize different approaches for public and private employees. This can be seen in the legislative regulation of collective bargaining, labor negotiations, injunctions, arbitrations, and even work stoppages. It seems clear that there is just more legislative reluctance to intervene statutorily in private employment contracts than in public employment contracts. Accordingly, that this legislation would treat this aspect of a labor contract differently, by allowing only parties to privately negotiated pensions to opt out of coordination, is not disharmonious with this pattern, nor should it be viewed with a suspicion that the Legislature might have been unfamiliar with such distinctions.

---

understood to know the law, *People v Cash*, 419 Mich 230, 241; 351 NW2d 822 (1984), that the legislators did consider the PSERA and opted to have the PSERA, but not the Fire Fighters and Police Officers Retirement Act and the State Police Retirement Act, be subject to the general rule set forth in § 354(1). After all, preferential, or at least unique, treatment of public safety officers is not at all unusual in our statutes. One merely needs to consider the singular rules regarding striking and arbitration by public safety officers to be reminded of this.

We note that the dissent finally argues that there is a "more proper way," i.e., the way provided for in the coordination provision of the State Police Retirement Act, to prevent double recovery for workers with PSERA pensions than through the legislatively chosen coordination provision of § 354(1). *Post* at 401. On the wings of that notion, we are then encouraged to say that no coordination can be held to have been accomplished by the Legislature in enacting §§ 354(1) and (14). This approach betrays a misunderstanding of our place in the constitutional structure. Our role as members of the judiciary is not to determine whether there is a "more proper way," that is, to engage in judicial legislation, but is rather to determine the way that was in fact chosen by the Legislature. It is the Legislature, not we, who are the people's representatives and authorized to decide public policy matters such as this. To comply with its will, when constitutionally expressed in the statutes, is our duty.

In fact, that the Michigan Legislature would apply different rules to the two types of pensions is even more explicable when one considers that the roughly parallel federal legislation that dominates this field, the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.*, treats pensions maintained by governments differently than those coming from private contractual plans that are subject to the act. 29 USC 1002(32) and 1321(b)(2). This is compelling because federal treatment of matters in other legal fields, such as discrimination, is frequently held to be instructive in explicating our Legislature's treatment of similar matters.[11] In light of this pattern, we are reinforced in our conclusion that § 354(14), when understood in context, can, and does, apply only to privately negotiated pension plans.

Moreover, the argument we advance to interpret this statute is such as to give it coherence and rationality, whereas plaintiff's position, when fully examined, would create a statute that, essentially, has the Legislature acting futilely by marching up the coordination mountain only to about-face and immediately march back to the same spot. Under plaintiff's reading of the statute, the first clause of § 354(14) applies to his PSERA pension, and because the Legislature never, after 1982, "renewed" it or established a new plan, the pre-1982 rule of non-coordination remains to this day in effect for statutory pensions such as his. The problem with this analysis, however,

---

[11] See, e.g., *Sanchez v Lagoudakis*, 440 Mich 496, 503-504; 486 NW2d 657 (1992) (finding the federal statute's intent to include a perception of handicap instructive with respect to whether the Michigan statute included such a perception); *Stevens v Inland Waters, Inc*, 220 Mich App 212, 216-217; 559 NW2d 61 (1996) (using terms from federal disability statutes to define a term in the Michigan statute).

is that if the exception contained in the first clause of § 354(14) applied not only to privately negotiated pensions, but also to those created by statute, such as the one at issue here, virtually all imaginable pensions (that is, statutory and private) in existence on § 354's effective date would be excepted from the broad rule of coordination that was the very purpose of the statute. It would be a circumstance, to use the familiar formulation, where the exception would swallow the rule. Such a construction should be avoided.[12] It is, after all, a well-known principle that "[s]tatutes should be construed so as to prevent absurd results . . . ." *McAuley v General Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998). We should heed this venerable rule that is based on respect for our co-equal branch of government, and accordingly on this basis also reject the reading of § 354(14) tendered by plaintiff.

For all these reasons, we hold that disability pension benefits under the PSERA are not included in the exception set forth in § 354(14). Accordingly, PSERA disability pension benefits are to be coordinated with worker's compensation benefits as mandated in § 354(1).

### B. CONST 1963, ART 9, § 24

Plaintiff also asserts that, notwithstanding the merits of any statutory construction argument, to con-

---

[12] Moreover, even if the Legislature had proceeded so puzzlingly, would it not, having done so, immediately have enacted the "renewal" so as to cause coordination? It seems irrefutable that it would have been reasonable to do so, and the failure to do so, or if the Senate analysis is to be relied on, even to have considered it, should draw us away from such a perverse understanding of the Legislature's actions.

strue the statute to require coordination of the PSERA
disability pension payments with worker's compensa-
tion benefits causes the statute to run afoul of Const
1963, art 9, § 24. This section of the constitution
states: "The accrued financial benefits of each pen-
sion plan and retirement system of the state and its
political subdivisions shall be a contractual obligation
thereof which shall not be diminished or impaired
thereby."

Specifically, plaintiff argues that construing § 354
to require coordination here would diminish or impair
an accrued financial benefit under a state pension
plan. This position is misbegotten, however, because
the statute effects no diminishment or impairment.
This section of the Michigan Constitution protects
only *pension* benefits, not *worker's compensation*
benefits, from diminishment or impairment. This is
dispositive, because here it is the worker's compensa-
tion benefits, not the pension benefits, that are being
reduced.[13]

Coordination has not "diminished" the value of the
pension, because the amount paid as a pension bene-

---

[13] Although parties may make certain assumptions about worker's com-
pensation benefits when entering into a pension plan, benefits and liabili-
ties in the worker's compensation statute "do not create rights protected
by the Contract Clause." *Romein v General Motors Corp*, 436 Mich 515,
534; 462 NW2d 555 (1990). As this Court has stated, " 'The subject matter
of workmen's compensation reposes within the control of the legislature.
A law enacted pursuant to rightful authority is proper, and private con-
tracts are entered into subject to that governmental authority.' " *Lahti v
Fosterling*, 357 Mich 578, 592; 99 NW2d 490 (1959), quoting *In re Schmidt
v Wolf Contracting Co, Inc*, 269 AD 201, 207-208; 55 NYS2d 162 (1945).
Thus, those party to a private pension would have no protected rights in
worker's compensation benefits, and their contract would be subject to
changes in the worker's compensation law. Similarly, plaintiff did not have
a protected right to worker's compensation benefits, and thus his pension,
although statutory, is a contract subject to changes in the worker's com-
pensation law.

fit does not change. Plaintiff received the same amount each month as a disability pension benefit both before and after coordination. Moreover, there has been no "impairment" of the disability pension, because coordination has not made the pension less secure, the pensioner has not been required to meet any new conditions or undertake any new responsibilities, and neither the reliability nor collectibility of the payor has been affected. Accordingly, in no sense have plaintiff's pension benefits been "diminished or impaired" by application of § 354 coordination to his worker's compensation benefits.[14]

We find useful a Court of Appeals case addressing this constitutional issue. In *Seitz v Probate Judges Retirement System*, 189 Mich App 445; 474 NW2d 125 (1991), a statute required that state retirement benefits paid to judges be reduced so that when added to county retirement benefits the total equaled no more than sixty-six and two-thirds percent of the judge's final salary. The *Seitz* Court found that any reduction in the amount of state pension benefits did not violate the constitution with respect to the county benefits, which continued to be paid at the same level.[15] *Id.* at 449-451. Similarly, in this case, any reduction in the amount of plaintiff's worker's compensation benefits does not violate the constitution with respect to his

---

[14] It is thus not necessary to determine whether plaintiff's disability pension benefit had "accrued."

[15] The Court did state that if the amount of the state pension were actually reduced, it may be a violation of § 24, because both state and county benefits are protected under § 24. *Seitz, supra* at 451. Here, however, the benefit actually reduced, worker's compensation, is not, as we have shown, similarly protected, and thus any reduction in its amount is not a violation of § 24.

disability pension benefits, which he continues to receive at the same level.

In support of his contention that coordination violates art 9, § 24, plaintiff cites a footnote in *Franks, supra*. In the context of our holding that worker's compensation is an income-maintenance benefit payable under a legislatively mandated social welfare program, and thus is not "property" protected by the Contract Clause of the United States Constitution,[16] we observed in a footnote that art 9, § 24  of the Michigan Constitution nevertheless protects accrued financial benefits of state pension plans and retirement systems. *Franks, supra* at 654, n 9. This footnote does not imply that worker's compensation is protected under § 24; instead, it was inserted to point out that other legislatively mandated income-maintenance programs, i.e., the pensions of governmental employees, are expressly protected. Plaintiff is correct that his pension is entitled to protection from diminishment or impairment. We hold, however, that by reducing the amount of worker's compensation benefits, coordination does not "diminish or impair" his disability pension benefits. As a result, a reduction in worker's compensation payments because of coordination with a PSERA pension under § 354(1) does not violate art 9, § 24 of the Michigan Constitution.

IV. CONCLUSION

The Legislature distinguished between privately negotiated and statutorily created pensions in § 354(14). Only the former fall within the exception to coordination found in § 354(14). Thus, under § 354(1)'s broad coordination requirement, pension

---

[16] US Const, art I, § 10.

benefits paid pursuant to the PSERA are to be coordinated with worker's compensation benefits. In addition, any reduction in worker's compensation resulting from § 354 coordination does not violate Const 1963, art 9, § 24  because the reduction does not diminish or impair a government pension benefit. Accordingly, the reduction of plaintiff's worker's compensation benefits because of payments he received under his PSERA disability pension was appropriate under § 354. For these reasons, we affirm the judgment of the Court of Appeals.

WEAVER, C.J., and BRICKLEY, CORRIGAN, and YOUNG, JJ., concurred with TAYLOR, J.

KELLY, J. (*dissenting*). I disagree with the majority that plaintiff's disability pension payments under the Public School Employees Retirement Act (PSERA)[1] are not excepted from coordination with worker's compensation payments under the Worker's Disability Compensation Act (WDCA).[2] I would reverse the decision of the Court of Appeals, because the Legislature has failed to express an intention that coordination occur.

The Court of Appeals opinion relied on the fact that the Legislature chose the phrase "plan or program" in § 354(1) and the term "plan" in § 354(14). It used the distinction to support its position that all publicly created pension plans are subject to coordination, while some privately negotiated pensions may not be subject to coordination. The majority in this Court has wisely declined to rely on the plan/program distinc-

---

[1] MCL 38.1301 *et seq.*;  MSA 15.893(111) *et seq.*

[2] MCL 418.354(14);  MSA 17.237(354)(14).

tion. It nonetheless perpetuates it in its distorted reading of § 354(14).

The majority maintains that the Legislature's choice of "created" and "amended" in § 354(14) evidences a legislative intent that only pension plans established through collective bargaining be free of coordination. It fails to recognize that even statutorily created pension plans are subject to contractual negotiation and, in some cases, the Legislature has made them mandatory bargaining subjects. For example, MCL 38.556e; MSA 5.3375(6.5) provides that the pension system sections of the Fire Fighters and Police Officers Retirement Act are a mandatory subject of bargaining.

In light of this fact, I disagree that the Legislature intended the distinction the majority draws between statutorily and privately created pension plans. Had the Legislature wished to draw a line between privately and publicly created systems in § 354(14), it easily could have, and most likely would have, done so in a far less confusing manner.

I conclude, that the better view is that the Legislature utterly failed to consider the interaction of the PSERA with the WDCA's coordination provisions. I note that, while the PSERA does not, the State Police Retirement Act (SPRA)[3] does contain its own coordination provision. Specifically, under its disability retirement section, the SPRA states:

> The retirement allowance payable under this section, when added to the statutory worker's compensation benefits applicable in the case, shall not exceed the average annual salary paid to the member for the 2 years immedi-

---

[3] MCL 38.1601 *et seq.*; MSA 5.4002(1) *et seq.*

ately before the duty disability retirement allowance effective date. [MCL 38.1626(4); MSA 5.4002(26)(4).]

The Fire Fighters and Police Officers Retirement Act[4] also contains its own specific provision requiring coordination of disability benefits with worker's compensation benefits.[5] Had the Legislature intended to include such a provision in the PSERA, it could easily have done so. The lack of such a provision, coupled with the ambiguous language of § 354(1) and § 354(14), shows that the Legislature did not consider the effect of those sections on the PSERA.

Even if the Legislature had addressed coordination in the context of the instant case with the intent of preventing double recovery, the majority's decision does not comport with such an intent. The majority assumes that coordination requires that plaintiff's worker's compensation payments be decreased by the amount of the pension benefits received under the PSERA. As indicated under MCL 38.1626(4); MSA 5.4002(26)(4), there is a more proper way to prevent double recovery. It is to reduce the total benefits only enough to ensure that the PSERA allowance, added to

---

[4] MCL 38.551 *et seq.*; MSA 5.3375(1) *et seq.*

[5] The Fire Fighters and Police Officers Retirement Act specifically provides:

> Amounts paid under Act No. 317 of the Public Acts of 1969 [MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*] to a retired member shall be offset against and payable in place of benefits provided under this act. If the benefits under Act No. 317 of the Public Acts of 1969 are less than the benefits payable under this act, the amount to be paid out of the funds of the retirement system shall be the difference between the benefits provided under Act No. 317 of the Public Acts of 1969 and the benefits provided in this act. Upon the termination of benefits under Act No. 317 of the Public Acts of 1969, the benefits shall be paid pursuant to this act. [MCL 38.556(2)(f); MSA 5.3375(6)(2)(f).]

worker's compensation benefits, does not exceed the average annual salary paid before disability. Requiring offset of WDCA benefits in the full amount of PSERA benefits does not comport with the goal that worker's compensation benefits should " 'restore wage-earning capacity lost in on-the-job accidents.' " *Franks v White Pine Copper Div*, 422 Mich 636, 654-655; 375 NW2d 715 (1985).

Where the Legislature has ambiguously expressed itself, we may be called on to interpret its intent. However, as my colleagues in the majority have frequently pointed out in other contexts, it is improper for us to engage in result-oriented judicial legislation. If the Legislature wishes to amend § 354(1), § 354(14), or the language in the PSERA to cause coordination of benefits, it knows how to accomplish that. Rather than awaiting legislative amendment of the statute, the majority elects to do it itself through a tortured reading of § 354(1) and § 354(14). I decline to join in it.

For the above reasons, I respectfully dissent.

CAVANAGH, J., concurred with KELLY, J.