Corrigan, C.J.
I respectfully dissent. While I agree with the lead opinion’s conclusion that the police officer in this case was attempting to “keep the peace,” I reject its unnecessarily narrow reading of the word “obstruct.”[1] In effect, the lead opinion inserts a new element—actual or threatened physical interference—into the resisting and obstructing statute. In my view, defendant’s alleged conduct—lying to the officer about his name and age—clearly falls within a common understanding of the word “obstruct.” Accordingly, I would affirm the judgment of the Court of Appeals.
*116 I. THE RULES OF STATUTORY INTERPRETATION
Resolution of this case requires an examination of the text of the resisting and obstructing statute.[2] As set forth in Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999), the principles guiding our interpretation of statutes axe well established:
The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature. Murphy v Michigan Bell Telephone Co, 447 Mich 93, 98; 523 NW2d 310 (1994). See also Nation v W D E Electric Co, 454 Mich 489, 494; 563 NW2d 233 (1997). This task begins by examining the language of the statute itself. The words of a statute provide “the most reliable evidence of its intent.” United States v Turkette, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted. Tryc v Michigan Veterans’ Facility, 451 Mich 129, 135; 545 NW2d 642 (1996).
The Legislature has provided that “[a]ll words or phrases shall be construed and understood according to the common and approved usage of the language.” MCL 8.3a. We thus consult a lay dictionary when defining common words or phrases that lack a unique legal meaning. See Robinson v Detroit, 462 Mich 439, 456; 613 NW2d 307 (2000).
H. ANALYSIS
The resisting and obstructing statute states:
*117 Any person who shall knowingly and wilfully obstruct, resist or oppose any sheriff, coroner, township treasurer, constable or other officer or person duly authorized, in serving, or attempting to serve or execute any process, rule or order made or issued by lawful authority, or who shall resist any officer in the execution of any ordinance, by law, or any rule, order or resolution made, issued, or passed by the common council of any city board of trustees, or common council or village council of any incorporated village, or township board of any township or who shall assault, beat or wound any sheriff, coroner, township treasurer, constable or other officer duly authorized, while serving, or attempting to serve or execute any such process, rule or order, or for having served, or attempted to serve or execute the same, or who shall so obstruct, resist, oppose, assault, beat or wound any of the above named officers, or any other person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years, or by a fine of not more than one thousand dollars. [MCL 750.479 (emphasis added).]
Resolution of this case turns on our interpretation of the word “obstruct” as it refers to police attempts to keep the peace. Consistent with the principles of statutory interpretation set forth above, we must examine the “common and approved usage” of the word. MCL 8.3a. As noted in the lead opinion, Random House Webster’s College Dictionary (1991) defines “obstruct” as: “1. to block or close up with an obstacle .... 2. to hinder, interrupt, or delay the passage, progress, course, etc. of. 3. to block from sight; be in the way of (a view, passage, etc.).” Although this definition of “obstruct” clearly encompasses physical interference, it is not limited to physical interference. Certainly, it is possible to hinder, *118 interrupt, or delay an officer’s attempts to keep the peace without resorting to actual or threatened physical interference, as the lead opinion would require.
This Court recognized as much in People v Philabaun, 461 Mich 255, 264; 602 NW2d 371 (1999), when we held that the defendant’s polite refusal to comply with a search warrant for the extraction of blood, “although indisputably passive in nature, was nevertheless sufficient to constitute obstruction, resistance, or opposition.” We explained that “[Physical resistance, threats, and abusive speech can be relevant facts in a prosecution under this statute, but none is a necessary element.” Id. at 262. Today, the lead opinion attempts to revise Philabaun by explaining that the defendant’s nonphysical conduct in that case actually “rose to the level of threatened physical interference.” Ante at 97. Thus, under the lead opinion’s curious logic, although neither physical resistance nor threats are necessary elements of the statute, prosecutors must still prove the existence of either an actual or threatened physical interference.
The lead opinion reasons that the defendant’s conduct in Philabaun rose to the level of threatened physical interference because, when he refused to cooperate, “the next likely sequence of events very well could have been the possible injury of a police officer attempting to enforce the search warrant.” Ante at 97 (emphasis added). Accordingly, rather than focusing on a defendant’s actual oral or nonphysical act of obstruction, the lead opinion demands a difficult inquiry into “likely” and “possible” consequences of such an act. It would have courts ask whether the defendant’s act would place the police officer in a *119 “situation in which his next act would, more likely than not, involve physical confrontation.” Ante at 98 (emphasis added). I do not believe that such inquiry is practicable or required by the plain statutory language. Consistent with the most straightforward reading of our decision in Philabaun, I would hold that oral, nonphysical acts that hinder, interrupt, or delay an officer’s attempts to keep the peace constitute obstruction under the resisting and obstructing statute.
Applying the statute to these facts, defendant’s alleged conduct falls within the plain meaning of the word “obstruct.” A state trooper tried to gather information to investigate his suspicion that defendant was an intoxicated minor. When asked to provide his name and age, defendant had two lawful choices: he could have answered truthfully or exercised his constitutional right not to answer at all. Instead, defendant chose to lie. By doing so, he impeded the officer’s investigation by creating a nonphysical obstacle to the officer’s attempt to gather accurate information.[3]
The lead opinion, relying on the doctrine of noscitur a sociis, concludes that the word “obstruct” refers only to physical obstruction despite the fact that the common understanding of the word clearly encompasses both physical and nonphysical obstruction. The noscitur a sociis doctrine stands for the simple proposition that the words of a statute should be understood in context. See Tyler v Livonia Public *120 Schs, 459 Mich 382, 390-391; 590 NW2d 560 (1999). While I have no objection to inteipreting the word “obstruct” in the context of its placement in the statute, I disagree with the lead opinion’s conclusion that the Legislature’s placement of the word “obstruct” in a list of words also including “resist, oppose, assault, beat or wound,” indicates an intent to limit the common meaning of the word to include only physical obstruction. The lead opinion’s conclusion that physical interference is the only element common to all six words overlooks the fact that the simple notion of interference also connects all six words. While all six words are verbs that could be used to describe acts of physical interference, only two of them, “beat” and “wound,” definitely require a physical act; the other four may also be used to describe nonphysical acts. Thus, read in context, it is at least equally likely that the Legislature meant to criminalize all types of interference, both physical and nonphysical.
More fundamentally, the unique structure of the statute at issue demonstrates that the Legislature did not intend that its grouping of the six words together give special meaning to any of the words. At the beginning of the statute, regarding service of process, the words “obstruct, resist, or oppose” are specifically set apart from the words “assault, beat, or wound.” Later, however, when the statute refers to keeping the peace, all six words are listed together. Notably, in the second instance the list is preceded by the word “so,” which refers readers directly back to the statute’s earlier use of the same words. Because the meaning of each word contained in the list of six is established by reference to the first part of the statute, where “obstruct, resist, or oppose” are set apart *121 from “assault, beat, or wound,” the fact that the word “obstruct” later appears with the words “assault, beat or wound” should not be given any special significance.
To the extent that the meaning of the word “obstruct” can be determined from context, the only relevant comparable words are “resist” and “oppose.” Because resistance and opposition can be oral or nonphysical just as easily as they can be physical, proper application of the doctrine of noscitur a sociis does not support the conclusion that the Legislature intended the word “obstruct” to have a limited meaning. If anything, the Legislature’s decision to initially separate the words “obstruct, resist, or oppose” from the words “assault, beat, or wound” suggests an intention to avoid an inteipretation that would require a physical component.
m. THE LEAD OPINION’S OTHER ARGUMENTS
Perhaps not entirely satisfied with the force of its statutory construction argument, the lead opinion includes a number of additional arguments in support of its position. First, the lead opinion suggests that my interpretation of the statute would criminalize a defendant’s assertion of the constitutional right against compelled self-incrimination. See ante at 92, n 3.1 disagree. The silence of a person with no independent legal duty to speak simply cannot be characterized as an obstacle to a police investigation in the same manner as an affirmative untruthful statement. Unlike a false statement, which by its nature is misleading, lawful silence merely requires police officers to perform the full extent of their investigative duties—unaided and unimpeded—within the bounda *122 ríes of the law. In other words, a legally justified refusal to offer assistance is not the equivalent of a positive decision to interfere.
Second, the lead opinion relies heavily on the notion that the Legislature could have written the resisting and obstructing statute to more clearly criminalize lying to the police by simply including “lying” in the list of prohibited actions. Ante at 95, 96, n 8. This argument is not persuasive. Generally speaking, our job is to interpret the meaning of the plain language of the words actually used by the Legislature. Rather than making assumptions based on what the Legislature could have done, we should strive to determine what it actually did. Certainly, our job would be easier in this case if the Legislature had specifically listed “lying” among the prohibited actions. Nevertheless, the Legislature’s failure to use the word “lying” does not alter the conclusion that lying can “obstruct” a police investigation.
Finally, the lead opinion suggests that its position is bolstered because the Legislature has specifically addressed the problem of lying to police officers in other statutes. Ante at 93, n 4. The first statute identified in the lead opinion, MCL 257.324(l)(h), is clearly inapplicable because it relates only to persons detained for violations of the motor vehicle code. The second statute identified in the lead opinion, MCL 750.217, is also arguably inapplicable because it has been construed to apply only to situations involving physical concealment. See People v Jones, 142 Mich App 819, 823; 371 NW2d 459 (1985) (holding that lying to the police does not constitute a “disguise”). Accordingly, the prosecutor’s only alternative in this *123 situation was to charge defendant under MCL 750.479.[4]
IV. CONCLUSION
The lead opinion’s conclusion that the crime of resisting and obstructing requires actual or threatened physical interference has no basis in the text of the statute. Our recent decision in Philabaun established that oral or nonphysical conduct may fall within the plain meaning of the statute. For these reasons, I respectfully dissent.
Weaver and Young, JJ., concurred with Corrigan, C.J.

 For the reasons set forth in this dissent, I also disagree with Justice Kelly’s separate opinion, which reaches essentially the same conclusion as the lead opinion.

 This Court reviews de novo questions of statutory interpretation. Donajkowski v Alpena Power Co, 460 Mich 243, 248; 596 NW2d 574 (1999).

 While the facts of this case indicate a de minimis violation of the statute, I caution my colleagues that hard facts make bad law. It is certainly conceivable that under different factual circumstances, lying to a police officer during an investigation could have grave consequences.

 Even if MCL 750.217 or MCL 257.324(l)(h) were available under these facts, nothing in either statute reflects a legislative intent to limit the prosecutor’s charging discretion. The enactment of a statutory provision covering a factual scenario does not automatically preclude a prosecutor from proceeding under a different statutory provision that also encompasses the same factual scenario. E.g., People v Little, 434 Mich 752, 760; 456 NW2d 237 (1990).