*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ADR CONSULTANTS, LLC,

        Plaintiff/Counterdefendant-
Appellee,

v

MICHIGAN LAND BANK FAST TRACK
AUTHORITY,

        Defendant/Counterplaintiff-
Appellant,

and

MICHIGAN STATE HOUSING
DEVELOPMENT AUTHORITY,

        Defendant-Appellant.

FOR PUBLICATION
January 24, 2019
9:00 a.m.

No. 341903
Court of Claims
LC No. 15-000177-MK

Before: CAMERON, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

CAMERON, P.J.

In this contract dispute, defendants, the Michigan Land Bank Fast Track Authority (MLB) and the Michigan State Housing Development Authority (MSHDA), appeal the Court of Claims' November 29, 2017 opinion and order denying defendants' motion for summary disposition under MCR 2.116(C)(7). Two years after the initial complaint was filed in the Court of Claims, plaintiff, ADR Consultants, LLC's (ADR), filed an amended complaint adding a breach of contract claim for $420,000. The trial court concluded that ADR's amended claim did not violate the one-year notice requirement for claims filed in the Court of Claims as set forth in MCL 600.6431(1). Because the statutory language under MCL 600.6431(1) does allow ADR's amended claim to relate back to the original complaint, we affirm.

## I. BACKGROUND

On August 29, 2012, ADR and the MLB entered into a contract wherein ADR would provide inspection demolition services in connection with the City of Detroit's Hardest Hit Blight Program. The MLB was tasked with "blight elimination" within the City of Detroit and across Michigan, which included demolition work. Additionally, the MLB was to manage and dispose "of public property in a coordinated manner to foster the development of that property." The MLB, therefore, contracted with ADR to act as an MLB contractor for this blight elimination. ADR's role was to "assist the MLB and the Department of Technology, Management and Budget . . . in organizational, procurement, and management tasks." ADR would "provide technical assistance and project management services to the MLB" and help the MLB manage the demolition of various sites. However, other contractors or subcontractors would conduct the actual demolition work.

After giving 90 days' notice, the MLB could terminate the contract for convenience "if the State determine[d] that a termination [was] in the State's best interest." Upon termination for convenience, however, the MLB was required to "pay [ADR] all charges due for Deliverable(s) provided before the date of termination and, if applicable, as a separate item of payment, for work-in-progress, based on a percentage of completion determined by the State." Deliverables were included in those services performed by ADR. In other words, if the MLB terminated for convenience, it would be required to make all outstanding payments to ADR for the work it had provided up until termination.

After the contract was signed, the MLB requested that ADR perform additional services outside of the contract's scope, including new demolition project management and "in-process demolition inspections." The parties disputed whether these additional services were to be paid at a rate of $55 per hour, and this term was never written into the contract. However, the Executive Director at the MLB claimed that the parties verbally agreed to this price. ADR began work on these out-of-scope services on September 11, 2012.

In 2013, MSHDA tasked the Detroit Land Bank Authority (DLBA) with oversight of the Hardest Hit Fund program. In November 2013, the DLBA and the MLB signed an intergovernmental agreement (IGA) between themselves in which the MLB agreed to provide project management assistance to the DLBA for carrying out the Hardest Hit Fund program. The DLBA agreed to pay the MLB $100 for each property that it provided demolition project management services. To accomplish its duties under the IGA, the MLB hired ADR as project manager to help administer the Hardest Hit Fund program. The DLBA would notify the MLB and request that ADR perform services, i.e., inspection work and blight certifications. The MLB would then notify ADR of the DLBA's request and engage ADR's services.

By September 2014, the MLB was allegedly $50,000 behind in its payments to ADR for both "[c]ontract and the in-process hourly rate demolition inspections." Plaintiff claimed that it had not been paid for these services since January 2014. Additionally, by December 2014, ADR had allegedly not been paid for the Hardest Hit Fund inspections it had performed. James Wright of the DLBA allegedly informed ADR that the DLBA was experiencing financial issues and that ADR could not be paid until February 2015. However, on January 30, 2015, the DLBA allegedly informed ADR that the DLBA would not pay ADR. Moreover, the MLB reportedly

refused to pay for the Hardest Hit Fund inspections. ADR halted its Hardest Hit Fund inspections on February 9, 2015, but continued to manage the Hardest Hit Fund program. On April 15, 2015, ADR received a notice of termination for convenience and a stop-work order from the MLB. This terminated the original contract between ADR and the MLB.

The parties dispute whether ADR was to receive additional compensation for managing the Hardest Hit Fund program. In its original complaint, ADR alleged that it had agreed to manage the Hardest Hit Fund program "at no cost in recognition of both its own desire to benefit the City as well as in recognition of, according to MLB, the funding mechanism that the [Hardest Hit Fund program] would generate for MLB." However, in its amended complaint, ADR alleged that it had agreed to manage the Hardest Hit Fund program "in consideration of [d]efendants' agreement that [ADR] would continue to manage the blight demolition program, including additional demolitions within the [Hardest Hit Fund program] to which [ADR] was to be paid for its in-process inspections." In both complaints, however, ADR alleged that the MLB advised ADR that the Hardest Hit Fund program would pay the MLB $100 per home, that there were approximately 4,200 such homes, and that this sum would therefore total $420,000. ADR further alleged that this $100 per property totaling $420,000 was intended to pay for subsequent blight removal efforts managed by ADR, but ADR never received the $420,000. In other words, in exchange for its work in the Hardest Hit Fund program, ADR expected to receive future demolition work within the blight elimination program for which it would be paid by the MLB. ADR valued this future work at $420,000, the same amount that the MLB received from the DLBA for the Hardest Hit Fund program.

According to the MLB, however, it informed ADR at the outset that it would not receive any further compensation from the MLB for the work ADR performed in the Hardest Hit Fund program. MLB denied that the $100 per home was ever intended to go to ADR, whether directly or indirectly. This $420,000 claim is at the heart of this appeal.

On July 31, 2015, ADR filed its Notice of Intent to File Claim with the Court of Claims. The original complaint was filed on August 14, 2015, and the $420,000 claim was neither raised nor addressed. Defendants filed their first motion for summary disposition on January 5, 2016, contending, *inter alia*, that MCL 600.6431 barred ADR's claims because notice of those claims had not been provided within one year of accrual. On April 26, 2016, the trial court issued an opinion and order granting defendants' motion in part and denying it in part. Rejecting defendants' MCL 600.6431 argument, the trial court stated that

> the only example defendants' [sic] offer in support of their position is an allegation in the complaint that February 2014 was the last time [ADR] received payment for in-process demolition inspections. However, this statement does not exclude the possibility that [ADR] performed in-process demolition inspections after July 31, 2014 for which it was not paid. Defendants have not substantiated their assertion that plaintiff is seeking to recover for claims that accrued prior to July 31, 2014.

On July 10, 2017, ADR filed a motion to amend its complaint to add the claim for $420,000 in future inspection services. According to defendants, ADR was disingenuously seeking to add the $420,000 claim because it had admitted in its original complaint that it had

agreed to provide the services at no cost. Defendants also argued that leave to amend should be denied because it was futile; the Court of Claims Act barred the claim anyway because the original notice of intent was filed in July 2015 and ADR never mentioned the $420,000 claim. Because ADR failed to state the $420,000 claim in July 2015, defendants argued that it was barred by the statute. However, on July 25, 2017, the trial court granted ADR's motion to amend the complaint. On August 7, 2017, ADR filed its amended complaint and added the $420,000 claim.

On August 25, 2017, defendants filed a motion for summary disposition under MCR 2.116(C)(7), or for partial summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). Defendants again argued that the $420,000 claim was untimely under MCL 600.6431(1) because it was not filed within one year of the claim accruing. On September 29, 2017, before the trial court had ruled on defendants' August 25, 2017 motion for summary disposition, defendants filed another motion for summary disposition. In addition to their untimeliness arguments, they brought forth new deposition information from Kim Homan, the Executive Director at the MLB. According to defendants, Homan's testimony demonstrated that ADR knew about the $420,000 claim since 2013. Defendants maintained that ADR's knowledge of the claim bolstered defendants' MCL 600.6431(1) untimeliness argument.

On November 29, 2017, the trial court issued an opinion and order on both of defendants' summary disposition motions. Regarding the MCL 600.6431 timeliness requirement for the $420,000 claim, the trial court held that

> defendants raised these same arguments in their July 24, 2017 brief in response to plaintiff's motion for leave to file an amended complaint. By way of its July 24, 2017 order, the Court rejected those arguments. Defendants' second (and third) attempts to raise the same arguments read more like an untimely motion for reconsideration, and the Court rejects the same.

The trial court denied defendants' motions for summary disposition. On appeal, defendants argue the trial court erred because ADR failed to provide notice of the claim for $420,000 within one year of the claim's accrual in violation of MCL 600.6431(1).

## II. STANDARD OF REVIEW

A decision on a motion for summary disposition and the interpretation of a statute are reviewed de novo. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). When reviewing a motion brought pursuant to MCR 2.116(C)(7) for a claim "barred because of immunity granted by law," "this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Dextrom*, 287 Mich App at 428. "If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact." *Id*. at 429. "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Id*. "However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Id*.

III. ANALYSIS

Defendants argue that the trial court erred when it concluded that MCL 600.6431(1)'s notice requirement did not bar ADR's amended breach of contract claim. We disagree.

"[A] state cannot be sued without its consent, granted by a legislative enactment." *Greenfield Const Co, Inc v Mich Dep't of State Hwys*, 402 Mich 172, 193; 261 NW2d 718 (1978). However, "the government may voluntarily subject itself to liability," and it "may also place conditions or limitations on the liability imposed." *McCahan v Brennan*, 492 Mich 730, 736; 822 NW2d 747 (2012). The Court of Claims Act, MCL 600.6401 *et seq.*, imposes one such condition. *Id*. MCL 600.6431(1) states:

> No claim may be maintained against the state unless the claimant, within 1 year after such claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against the state or any of its departments, commissions, boards, institutions, arms or agencies, stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained, which claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths.

This statute "details the notice requirements that must be met in order to pursue a claim against the state, including a general deadline of one year after accrual of the claim." *McCahan*, 492 Mich at 744-745. A plaintiff must satisfy the conditions of MCL 600.6431(1) to successfully subject state agencies to liability, *Fairley v Dep't of Corrections*, 497 Mich 290, 297-298; 871 NW2d 129 (2015), and the "failure to strictly comply warrants dismissal of the claim," *Mays v Snyder*, 323 Mich App 1, 27; 916 NW2d 227 (2018). "The purpose of MCL 600.6431 is to establish those conditions precedent to pursuing a claim against the state." *Fairley*, 497 Mich at 292. "[S]tatutory notice requirements must be interpreted and enforced as plainly written and . . . no judicially created saving construction is permitted to avoid a clear statutory mandate." *McCahan*, 492 Mich at 733. Moreover, this Court "may not engraft an actual prejudice requirement or otherwise reduce the obligation to comply fully with statutory notice requirements." *Id*. at 746-747. With that said, the purpose of the one-year requirement is to provide notice of a claim, while the longer three-year statute of limitations under MCL 600.6452(1) is to make the claim specific. *Oak Const Co v Michigan*, 33 Mich App 561, 564; 190 NW2d 296 (1971).

The parties do not dispute that the original complaint was filed within the one-year notice period under MCL 600.6431(1). They also agree that the motion to amend the complaint was filed after the one-year period. Thus, the issue turns on whether a claim raised in an amended complaint after the one-year limitations period may nonetheless comply with MCL 600.6431(1) because the amended claim relates back to an original complaint properly filed within the one-year limitations period. We conclude that such an amendment is possible.

MCR 2.118(A)(2) provides that "[l]eave shall be freely given when justice so requires." For that reason, a motion to amend should ordinarily be granted. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997). Under MCR 2.118(D): "An amendment that adds a claim or a

defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading." "It does not matter whether the proposed amendment introduces new facts, a different cause of action, or a new theory, so long as the amendment springs from the same transactional setting as that pleaded originally." *Kostadinovski v Harrington*, 321 Mich App 736, 744; 909 NW2d 907 (2017).

To determine the interplay between the relation-back doctrine and MCL 600.6431(1), we find guidance from our recent decision in *Progress Mich v Attorney General*, 324 Mich App 659; ___ NW2d ___ (2018), which involved a claim under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*., against the Michigan Attorney General. In that case, the plaintiff filed its original complaint in the Court of Claims on April 11, 2017, but it failed to sign and verify the complaint as required under MCL 600.6431(1). *Progress Mich*, 324 Mich App at 663. On May 26, 2017, the plaintiff filed an amended complaint that included the same allegations but was signed and verified. *Id*. While the amended complaint was filed within one year of the claim's accrual, it was outside of the FOIA's 180-day statute of limitations, MCL 15.240(1)(b). *Id*. Therefore, the amended complaint "could only be deemed valid if it related back to the filing date of the original complaint." *Id*. at 664.

This Court in *Progress Mich* concluded that because the original complaint was neither signed nor verified, it was invalid because it did not satisfy the requirements under MCL 600.6431(1). *Id*. at 670-671. Thus, "because the claim was not verified in [the] plaintiff's initial complaint, the claim could not be asserted and thus lacked legal validity from its inception." *Id*. at 673. "Because [the] plaintiff's complaint was invalid from its inception, there was nothing pending that could be amended. Therefore, any attempt by [the] plaintiff to amend under MCR 2.118 was ineffectual." *Id*.

In this case, unlike in *Progress Mich*, ADR's initial complaint complied with the Court of Claims Act under MCL 600.6431(1). The complaint was signed and verified, informed defendant of the claims against them, and was timely filed. Thus, there was a valid complaint that could be amended under MCR 2.118. The question, then, turns on whether it could be amended to add the additional breach of contract claim for the $420,000.

As stated previously, in order for an amended complaint to relate back, it must "spring[] from the same transactional setting as that pleaded originally." *Kostadinovski*, 321 Mich App at 744. In this case, the amended claim did spring from the contractual arrangement between ADR and defendants, specifically that ADR would provide blight removal services on behalf of the MLB.

As a final point, we note that in *Progress Mich*, this Court held that the plaintiffs could not amend their complaints to comply with the verification requirement under MCL 600.6431(1) for the following reason: "[I]t effectively repeals the statutory requirement. Under [the] plaintiff's view, plaintiffs could routinely file their complaints without having the claims verified and then amend the complaint at a later date after the period of limitations had passed." *Progress Mich*, 324 Mich App 672 (quotation marks and citation omitted). In this case, unlike in *Progress Mich*, ADR's original complaint satisfied all requirements under MCL 600.6431(1). Thus, the concern in *Progress Mich* that a party could effectively avoid the statutory notice

requirements of MCL 600.6431 by amending a complaint is not present here because the original complaint met all of the statutory requirements. These requirements are meant to simply put the government on notice of the potential lawsuit, and ADR had three years from accrual to file a more specific claim. See MCL 600.6452(1); *Oak Const Co*, 33 Mich App at 564. Thus, the trial court did not err when it allowed ADR to amend the complaint and denied defendants' motions for summary disposition.[1]

Affirmed.

/s/ Thomas C. Cameron
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause

---

[1] ADR also argues that defendants appealed the wrong order. Rather than appeal the November 29, 2017 opinion and order denying defendants' motion for summary disposition, ADR claims that defendants should have appealed the July 25, 2017 order granting ADR's motion to amend its complaint. However, the July 25, 2017 order was simply a grant to amend a complaint. Such an order does not comport to the requirements listed in MCR 7.202(6)(a) and is not considered a final order. See MCR 7.202(6)(a). Thus, the November 29, 2017 opinion and order denying defendants governmental immunity was the appealable final order, and ADR's assertion is without merit.