*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM LANG,

        Plaintiff-Appellee,

v

STERLING HEIGHTS EMPLOYEES
RETIREMENT SYSTEM and BOARD OF
TRUSTEES OF THE STERLING HEIGHTS
EMPLOYEES RETIREMENT SYSTEM,

        Defendants-Appellants,

and

WALTER HESSELL, JACQUELINE NOONAN,
and CITY OF UTICA,

        Defendants.

UNPUBLISHED
June 10, 2021

No. 352497
Macomb Circuit Court
LC No. 2018-004202-NZ

Before: K. F. KELLY, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

Defendants Sterling Heights Employees Retirement System and its Board of Trustees (collectively referred to as "SHRS") appeal as of right the trial court's order denying their motion for summary disposition and granting plaintiff's motion for partial summary disposition of his claims requesting calculation of the dollar value of plaintiff's prior service credit, and ordering SHRS to transfer that amount to the Michigan Employees Retirement System. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff formerly worked for Sterling Heights and, by June 2004, he had earned approximately 18 years of service credit in SHRS. In 2004, before accepting a new position with the city of Utica, plaintiff investigated whether he could transfer his accrued service credit to

Utica's retirement system, which is through the Municipal Employees Retirement System of Michigan ("MERS"). After plaintiff began working for Utica, he attempted to arrange the service credit transfer once Utica adopted the Reciprocal Retirement Act (RRA), MCL 38.1101 *et seq*. Sterling Heights agreed to transfer plaintiff's service credit for retirement through the RRA, but it would only approve the payment of $124,288 for his accrued service. That amount was later increased to $155,000. Plaintiff claimed he should have received $340,421 as financial consideration for his accrued retirement benefits under the RRA's method for calculating service credit transfers. In 2007, SHRS adopted Resolution 07-01, by which it implemented its own method for calculating transfers of service credit under the RRA using SHRS's own actuary and an interest rate assumption adopted by SHRS.

At the time SHRS approved the transfer of $124,288 for plaintiff's accrued service, MERS had calculated that plaintiff needed $321,723 to fund his years of service with Sterling Heights in order to transfer his retirement to MERS. Although SHRS increased the transfer amount to $155,000, Utica declined to approve plaintiff's transfer of his service credit to MERS under the RRA because Utica would be responsible for paying the unfunded amount for plaintiff's years of service with Sterling Heights, as calculated by MERS. Plaintiff filed this action, primarily to compel SHRS to follow the requirements of the RRA for calculating the transfer of service credit.

SHRS moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that plaintiff was not entitled to a transfer under the RRA because it was Utica, not Sterling Heights, that refused to approve the transfer of his years of service. SHRS also alleged that plaintiff failed to demonstrate entitlement to financial consideration under the RRA because both municipalities did not agree to a transfer of service credit. SHRS further asserted that it was entitled to summary disposition on the basis of governmental immunity and quasi-judicial immunity.

Plaintiff filed his own motion for summary disposition, contending that he was entitled to summary disposition under MCR 2.116(C)(10) on his claims for a declaratory judgment (Count I) and mandamus (Count VII). Plaintiff submitted that SHRS had a clear legal duty under the RRA and Sterling Heights' own retirement ordinance to transfer the MERS dollar value of plaintiff's prior service, using the Pension Benefit Guarantee Corporation's ("PBGC") method for calculating transfers under the RRA, MCL 38.1106(3). He requested that the trial court issue a writ of mandamus directing SHRS to immediately transfer to MERS $473,265, which was the present-day value of his prior service credit computed using the PBGC method.

The trial court rejected SHRS's arguments and granted plaintiff's motion for partial summary disposition, finding no genuine issue of material fact that SHRS failed to follow the requirements of the RRA. The court further noted that plaintiff's right to compensation for his contributions to the retirement system were protected by Const 1963, art 9, § 24. The court issued a declaratory judgment holding that SHRS failed to follow MCL 38.1106(3) when calculating the amount to be paid for plaintiff's years of service, and ordered SHRS to immediately transfer $473,265 to MERS.

## II. SCOPE OF REVIEW

Initially, SHRS alleges that the trial court failed to apply the correct standard of review by failing to give proper deference to SHRS's decisions regarding plaintiff's request for a transfer of his service credit, and instead improperly substituting its judgment for that of SHRS. We disagree.

In *Caprathe v Mich Judges Retirement Bd*, 275 Mich App 315, 319-320; 738 NW2d 272 (2007), this Court explained that pension boards, like SHRS, are administrative agencies, whose decisions are entitled to deference when supported by competent, material and substantial evidence on the whole record. However, decisions by a pension board are also subject to review to determine if they are authorized by law. *Id.* As explained in Section II, the parties' dispute in this case concerned SHRS's application and interpretation of the RRA, which involved questions of law. The trial court could permissibly review SHRS's decisions to determine whether SHRS properly followed the RRA, and the court was not required to defer to SHRS's decisions to the extent that they were contrary to law. SHRS has not shown that the trial court exceeded the permissible scope of review.

## III. THE RRA

SHRS contends that the trial court erred in its application of the RRA because a credit transfer is discretionary, an agreement was not reached by SHRS and Utica regarding the service credit transfer and its cost, and SHRS was not required to use the PBGC assumptions when calculating the actuarial value. We disagree.

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018). Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties. MCR 2.116(G)(4), (G)(5); *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 68; 919 NW2d 439 (2018).

MCL 38.1103(1) provides that "[a]ny municipal unit, which covers its employees under a retirement system or systems, by a majority vote of its governing body may elect to adopt the provisions of this act for its employees covered under such retirement system or systems." The word "may" generally addresses permissive action, entrusting a choice to a party's discretion. *In re Complaint of Mich Cable Telecom Ass'n*, 241 Mich App 344, 361; 615 NW2d 255 (2000). Thus, it is discretionary with each municipality whether to adopt the RRA. See *Caprathe*, 275 Mich App at 321-323. The terms of the RRA supplement any retirement provisions adopted by a municipality. See MCL 38.1103(4). Therefore, SHRS is correct that it could adopt its own provisions to implement its retirement system for its employees.

It is undisputed that Sterling Heights adopted the RRA in 1969, when it adopted Ordinance 41-62, which provides:

**41-62. Reciprocal Retirement Act.**

(A) Pursuant to action by the City Council on November 4, 1969, the city adopts and elects to come under the provisions of sections 1 through 5 of the

Reciprocal Retirement Act, being Public Act 88 of 1961, as amended, MCL 38.1101 through MCL 38.1105, and the city is thereby a reciprocal unit under the Act.

(B) Pursuant to action by the City Council on December 7, 1999, the city adopts certain provisions of section 6 of the Reciprocal Retirement Act, being Public Act 88 of 1961, as amended, MCL 38.1106, as follows:

(1) Transfers of service credit and assets from the Retirement System to a succeeding reciprocal unit in accordance with section 6 of the Reciprocal Retirement Act shall be allowed subject to the succeeding reciprocal unit's pre-approval and acceptance of the service credit and the amount of financial consideration to be transferred.

(2) The financial consideration being transferred shall be based upon the actuarial present value of the retirement benefits payable by the Retirement System and shall be calculated by the Retirement System's actuary in accordance with the Reciprocal Retirement Act.

(3) This approval of section 6 of the Reciprocal Retirement Act is specifically limited to transfers from the Retirement System to a succeeding reciprocal unit and does not authorize the Retirement System to accept transfers from other retirement systems.

Thus, before plaintiff was employed by Sterling Heights, it had agreed to follow the RRA for employees who wished to transfer their accrued service toward retirement to another retirement system.

On November 15, 2007, SHRS adopted a policy resolution, 07-01, that addressed calculations of asset transfers under the RRA. This resolution provides:

**WHEREAS**, the Board of Trustees is vested with the power and authority to administer, manage and operate the City of Sterling Heights General Employees Retirement System and to construe and make effective the provisions of the retirement plan, and

**WHEREAS**, certain questions have arisen regarding the calculation of assets to be transferred under section 6 of the Reciprocal Retirement Act (Michigan Public Act 88 of 1961), and

**WHEREAS**, under Section 41-19 of the Retirement Ordinance the Board is vested with the power and authority to administer, manage and operate the Retirement System and to construe and make effective the provisions of the pension ordinance, and

**WHEREAS**, Section 41-65 of the Retirement Ordinance provides in part that

"(B) Pursuant to action by the City Council on December 7, 1999, the city adopts certain provisions of section 6 of the Reciprocal Retirement Act, being Public Act 88 of 1961, as amended, MCL 38.1106, as follows:

(1) Transfers of service credit and assets from the Retirement System to a succeeding reciprocal unit in accordance with section 6 of the Reciprocal Retirement Act shall be allowed subject to the succeeding reciprocal unit's pre-approval and acceptance of the service credit and the amount of financial consideration to be transferred.

(2) The financial consideration being transferred shall be based upon the actuarial present value of the retirement benefits payable by the Retirement System and shall be calculated by the Retirement System's actuary in accordance with the Reciprocal Retirement Act," and

**WHEREAS**, the language in section 6 indicates an upper limit on the amount that can be transferred is calculated using the PBGC rates, however, an amount less than the upper limit is allowed "based on the actuarial present value of the retirement benefits payable by the Retirement System".

**WHEREAS**, the Board has considered this issue and Section 41-65 of the Retirement Ordinance in public session and has determined that it is in the best interest of the Retirement System to restate its policy with respect to the calculation of asset transfers under section 6 of the Reciprocal Retirement Act,

**NOW THEREFORE, BE IT RESOLVED**, as follows:

The amount of assets to be transferred out of the system under section 6 of the Reciprocal Retirement Act shall be the lesser of the amount using the PBGC rates or the present value of the future liabilities of the plan as calculated by the Board's actuary using the interest rate assumption(s) adopted by the Board.

SHRS contends that this resolution permits it to use its actuary's calculations of the value of an employee's service credit to make transfers under the RRA because the RRA only sets a cap or a maximum value on amounts that can be transferred under the RRA, using the PBGC method. The language of the RRA does not support this interpretation of that act.

Once SHRS agreed to participate in the RRA for the benefit of its employees, it was obligated to follow the requirements of that act. MCL 38.1106 provides:

(1) A reciprocal unit, designated as the preceding reciprocal unit, may enter into an agreement with a reciprocal unit, designated as the succeeding reciprocal unit, to transfer credited service of a member who leaves the employ of the preceding reciprocal unit and enters the employ of the succeeding reciprocal unit. The agreement shall be by resolution of the governing body of each reciprocal unit.

The resolution shall specify the amount of credited service being transferred from the preceding reciprocal unit to the member's credit in the succeeding reciprocal unit and the amount of financial consideration being transferred from the preceding reciprocal unit to the succeeding reciprocal unit. The financial consideration transferred under this section shall not be greater than the larger of the following:

(a) The accumulated contributions of the member whose credited service is being transferred.

(b) The actuarial present value of the retirement allowance payable by the preceding reciprocal unit under [MCL 38.1104] if the preceding reciprocal unit does not transfer the member's credited service under this section.

(2) A succeeding reciprocal unit, before passing a resolution described in subsection (1), shall determine the actuarial present value of the retirement allowance that will be payable to the member under the retirement plan of the succeeding reciprocal unit attributable to the credited service to be transferred under subsection (1).

(3) The actuarial present value of the retirement allowance payable by the preceding reciprocal unit under subsection (1) and by the succeeding reciprocal unit under subsection (2) shall be calculated using the interest rate and mortality tables specified by the Pension Benefit Guarantee Corporation for calculating the actuarial present value of immediate and deferred pensions under a terminated pension plan as provided in part 2619 of subchapter C of chapter XXVI of title 29 of the Code of Federal Regulations, 29 C.F.R. part 2619.

(4) Each reciprocal unit, by resolution of the governing body of the reciprocal unit, shall establish a written policy to implement the provisions of this section in order to provide uniform application of this section to all members of the reciprocal retirement system.

The goal of statutory interpretation is to determine and give effect to the intent of the Legislature. *Le Gassick v University of Mich Regents*, 330 Mich App 487, 495; 948 NW2d 452 (2019). The clear and unambiguous language expressed by the Legislature must be enforced as written. *Id*. The term "shall" is unambiguous and denotes mandatory action. *Houghton-Portage Twp Sch v Petrelius*, 281 Mich App 520, 523; 761 NW2d 395 (2008). As noted, "may" signifies permissive or discretionary, not mandatory action. *In re Complaint of Mich Cable Telecom Ass'n*, 241 Mich App at 361.

The RRA was adopted by 1961 PA 88, which described the purpose of the RRA as "AN ACT to provide for the preservation and continuity of retirement system service credits for public employees who transfer their employment between units of government." Employees who work for municipalities that adopt the RRA are entitled to rely on the provisions of the RRA to ensure that they can transfer their service credits to a new employer. See MCL 38.1104. It is apparent that the intent of the RRA is to both preserve employees' retirement benefits and allow for

continuity in transferring the rights associated with service credits earned toward retirement. SHRS's interpretation of the RRA is inconsistent with this intent.

Essentially, SHRS contends that it is obligated to only pay financial consideration for an employee's service credit consistent with the rates it uses to determine the present value of retirement allowances. That amount is substantially less than the amount determined using the PBGC method. However, allowing preceding reciprocal retirement systems to do this would have the effect of negating the transfer of substantial portions of employees' service credits to a new employer's retirement system, imposing substantial costs on the succeeding reciprocal retirement systems, or raising the risk that retirement systems would be left underfunded. The Legislature intended to avoid this scenario by adopting a consistent method for determining the present value of transfers between municipalities' retirement systems. See MCL 38.1106(3).

There is no apparent reason why the Legislature would have included the mandate in MCL 38.1106(3) for setting the method for calculating the present value of a retirement allowance using the PBGC method if that was not intended to apply to all transfers under the RRA. That subsection uniformly applies to calculations made by both preceding and succeeding reciprocal retirement systems under the RRA. See MCL 38.1106(1)(b) and MCL 38.1106(2). Further, MCL 38.1106(3), which prescribes how to calculate the "actuarial present value of the retirement allowance" under both Subsections (1) and (2) using the PBGC method, uses the term "shall," which denotes mandatory action.

The premise of SHRS's argument is that MCL 38.1106(1) establishes a cap on the amount owed by the preceding retirement system in the following portion of that subsection:

> The financial consideration transferred under this section shall not be greater than the larger of the following:
>
> (a) The accumulated contributions of the member whose credited service is being transferred.
>
> (b) The actuarial present value of the retirement allowance payable by the preceding reciprocal unit under [MCL 38.1104] if the preceding reciprocal unit does not transfer the member's credited service under this section.

This language distinguishes between the amounts an employee may have contributed to his retirement plan and the actuarial present value of the employee's retirement allowance. As plaintiff suggests, this may have been intended to prevent discrimination in favor of highly compensated employees. It permits an employee who has not yet vested in a retirement system to receive credit for payments made toward his or her retirement with a preceding reciprocal unit. Nonetheless, that subsection does not express any clear intent to impose a cap on the present value of a retirement allowance transferred under the RRA.

Accordingly, the trial court correctly held that SHRS wrongly calculated the amount it was to pay Utica's system on plaintiff's behalf to allow plaintiff to transfer his years of service to his new employer. The underfunded calculation by SHRS was the reason Utica failed to confirm the transfer of plaintiff's service credit. Indeed Utica's mayor, Jacqueline Noonan, explained that Utica was willing to proceed under the RRA for plaintiff's retirement plan if the amount Sterling

Heights paid was consistent with the PBGC method, which had been used in past transfers under the RRA. It was reasonable for Utica to reject the service credit transfer when SHRS's decision effectively required Utica to pay for plaintiff's years of service with Sterling Heights.

We also note that Sterling Heights attempted to change the terms of its retirement ordinance through the adoption of the 2007 resolution by SHRS. The Sterling Heights retirement ordinance provides that it would follow the RRA. The retirement ordinance also provides, in § 41-17(B), that it would not retroactively change the terms of an employee's retirement after the employee left his employment with Sterling Heights. That subsection provides:

> The effective date of the Retirement System is July 1, 1969. Any amendments to this article will apply to individuals employed by the city on and after the effective date of the amendment. The retirement rights of an individual whose city employment terminated before the effective date of any amendment will be governed by the provisions of the retirement system in effect on the date the individual terminated employment.

Plaintiff left his employment with Sterling Heights before SHRS adopted the 2007 resolution, which changed how it calculated financial payments under the RRA. That violated the terms of the retirement ordinance as applied to plaintiff. Furthermore, as plaintiff points out, this impairment of his earned retirement benefits violated Const 1963, art 9, § 24, by reducing his accrued contractual rights regarding his retirement.[1] See *Seitz v Probate Judges Retirement Sys*, 189 Mich App 445, 449; 474 NW2d 125 (1991) (Const 1963, art 9, § 24 "protects those persons covered by a state or local pension or retirement plan from having their benefits reduced").

Furthermore, the 2007 resolution was invalid because it was adopted only by SHRS, and not the Sterling Heights governing body (i.e., the city council). MCL 38.1103 and MCL 38.1106(4) recognize that it is the governing body of the municipality that is charged with enacting provisions of the RRA. Therefore, SHRS alone could not make changes to the Sterling Heights retirement ordinance adopted by the city council.

Accordingly, we affirm the trial court's order granting plaintiff's motion for summary disposition on his claims that SHRS failed to follow the RRA regarding the transfer of service credit and the method for computing the financial consideration it must pay for the transfer of plaintiff's service credit to Utica's retirement system.

## IV. IMMUNITY

---

[1] Const 1963, art 9, § 24 provides:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.

SHRS and its trustees argue that the trial court erred by denying their motion for summary disposition on the basis of immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et set.*, or quasi-judicial immunity. We disagree.

Summary disposition may be granted under MCR 2.116(C)(7) when a claim is barred by immunity granted by law. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). "When reviewing a motion brought pursuant to MCR 2.116(C)(7) for a claim barred because of immunity granted by law, this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *ADR Consultants, LLC v Mich Land Bank Fast Track Auth*, 327 Mich App 66, 74; 932 NW2d 226 (2019) (Quotation and citation omitted). If documentary evidence is submitted, the trial court must examine the material to determine if there is a genuine issue of material fact. *Id.* If there is no factual dispute, whether a plaintiff's claim is barred is a matter for the court to determine as a matter of law. *Id.* If the parties present evidence that establishes a question of fact and that factual development could provide a basis for recovery, summary disposition is inappropriate. *Id.*

The SHRS's trustees submitted below that they were entitled to governmental immunity under MCL 691.1407 with respect to plaintiff's tort claim for breach of fiduciary duty as a matter of law because plaintiff failed to plead any facts in avoidance of immunity for that claim.

In Count VI of his complaint, plaintiff alleged that the trustees breached their fiduciary duties by promulgating Resolution 07-01 and applying it retroactively to plaintiff, contrary to the retirement ordinance previously adopted by Sterling Heights and Const 1963, art 9, § 24. A claim involving breach of fiduciary duty sounds in tort. *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 666; 954 NW2d 231 (2020). However, as the SHRS trustees observe, plaintiff did not allege that the trustees were grossly negligent, MCL 691.1407(8)(a).

MCL 691.1407 provides, in relevant part:

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

The SHRS trustees argue that they are entitled to governmental immunity under MCL 691.1407(2) as a matter of law because plaintiff did not allege gross negligence in support of this claim. Governmental immunity is a characteristic of government, not an affirmative defense. *Mack v Detroit*, 467 Mich 186, 197-203; 649 NW2d 47 (2002). A plaintiff who brings an action against a governmental agency must plead his claims in avoidance of governmental immunity, but an individual who claims governmental immunity must raise it as an affirmative defense. *Odom*, 482 Mich at 478-479. Because the claim of breach of fiduciary of duty applies only to the individual SHRS trustees, not the agency itself, the trustees incorrectly argue that plaintiff was required to plead his claim in avoidance of governmental immunity.

As stated in MCL 691.1407(8)(a), gross negligence requires "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." In MCL 691.1407, the Legislature intended to limit liability of governmental employees to only situations where the contested conduct was substantially more than negligent. *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999). Gross negligence involves

> almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004) (footnote omitted).]

Whether a government employee's conduct constituted gross negligence under MCL 691.1407 is generally a question of fact for the fact-finder. A court may grant summary disposition under MCR 2.116(C)(7) if, on the basis of the evidence, reasonable minds could not differ. *Tarlea*, 263 Mich App at 88. "Accordingly, when no reasonable person could find that a governmental employee's conduct was grossly negligent, our policy favors a court's timely grant of summary disposition to afford that employee the fullest protection of the GTLA immunity provision by sparing the employee the expense of an unnecessary trial." *Id.*

Although plaintiff's complaint did not include any allegations that specifically addressed gross negligence, plaintiff contends that the trial court did not err by denying summary disposition on the basis of governmental immunity because he prevailed on his claim for mandamus, which meant that the trustees were not acting within the scope of their authority, a necessary requirement for immunity under MCL 691.1407(2). We agree.

Plaintiff alleged in his complaint that SHRS's trustees breached their fiduciary duties by failing to administer the retirement system in compliance with Michigan law. As explained earlier, the trustees acted outside the scope of their authority and contrary to Const 1963, art 9, § 24, by not following the RRA and instead imposing their own method for computing the value of plaintiff's prior years of service. SHRS adopted its own resolution to change the method of computing transfers, contrary to the RRA. MCL 691.1407(2) does not foreclose tort liability against government employees acting outside the scope of their authority. Because SHRS's trustees were acting outside the scope of their authority in administering the retirement system and the trial court granted plaintiff's request for mandamus relief on that basis, the trial court did not err by denying summary disposition for the trustees pursuant to MCL 691.1407(2).

SHRS also argues that it is entitled to immunity as a quasi-judicial agency. Quasi-judicial immunity is an extension of the absolute immunity afforded to judicial officers for acts performed in the exercise of their judicial function. *Serven v Health Quest Chiropractic, Inc*, 319 Mich App 245, 253-254; 900 NW2d 671 (2017). Quasi-judicial immunity "is available to those serving in a quasi-judicial adjudicative capacity as well as those persons other than judges without whom the judicial process could not function." *Id*. at 254, quoting *Maiden*, 461 Mich at 134.

If SHRS had been acting within its authority to administer the retirement plan for Sterling Heights employees, it would be performing a quasi-judicial function. In this case, however, plaintiff alleged that SHRS ignored the requirements in the RRA and instead adopted its own resolution, which changed the terms of the RRA for Sterling Heights employees. On that basis, plaintiff's claims against SHRS involved its legislative role, or actions that went beyond the scope of SHRS's role in overseeing employee pension claims. Thus, SHRS was not acting in a "quasi-judicial" capacity when it made changes to the retirement ordinance that denied plaintiff the full value of his accrued pension benefits. Therefore, the trial court did not err by declining to apply quasi-judicial immunity in this case.[2]

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle

---

[2] In their brief on appeal, SHRS also asserted that plaintiff did not satisfy the elements necessary to apply the extraordinary remedy of granting a writ of mandamus. Because SHRS did not raise this issue in their statement of questions presented, we decline to consider it. See MCR 7.212(C)(5); *Busch v Holmes*, 256 Mich App 4, 12; 662 NW2d 64 (2003). However, to the extent this issue pertains to governmental immunity, we note that the trial court did not abuse its discretion by awarding this relief because it was the appropriate remedy for SHRS's failure to follow the RRA and plaintiff was unable to obtain relief in any other manner. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 518-519; 866 NW2d 817 (2014). Accordingly, the trial court did not err by declining to grant summary disposition for SHRS's trustees on the ground that they were entitled to immunity under MCL 691.1407(2).